### PETER HOWELL *v.* THOMAS ASHMORE.

1. In the case of a bill for mere discovery, if it appears reasonable that the complainant should be entitled to the disclosure, and no principles of law or equity are violated in enforcing it, the court will not be as nice in the application of technical rules as when an injunction, or relief, is asked for.

2. So, in a bill for discovery only, it is not necessary to aver that the discovery is absolutely necessary, or indispensable, to the defence. It will be sufficient to state and show that it is material evidence.

3. Nor is it necessary to allege in the bill that the plaintiff has no other witness or evidence to establish at law the facts of which the discovery is sought ; for he is entitled to it if it is merely cumulative evidence of material facts.

4. A mere clerical mistake of a single figure the court would permit to be corrected instanter, upon the suggestion, unless by any possibility the defendant had been misled by it.

5. A *bona fide* purchaser, without notice, and for a valuable consideration, is entitled to have his title protected by this court, nor will he be compelled to discover anything which will invalidate that title. But when the defendant is charged with a fraud, and that he has procured a title fraudulently, and is fraudulently setting it up to defeat the complainant, it is the peculiar jurisdiction of the Court of Chancery to compel such fraud-doer to disclose the fact alleged as a fraud, and all the circumstances attending the act, in order that the court may determine whether those circumstances establish the fraud or not.

6. It is a proper object for a bill of discovery to ascertain, in a case where the defendant's title can only prevail, upon the ground of his being a *bona fide* purchaser, without notice of the plaintiff's title, whether he *had such notice,* and to call upon him to disclose all the circumstances which may go to probe his conscience upon that point.

7. *The act of the legislature of this state, of March 1st, 1849, permitting the plaintiff to call on the defendant as a witness, upon the trial, does not deprive the plaintiff of the right to the discovery before the trial by exhibiting his bill in this court. The Supreme Court is not competent *to grant the same relief* which this court is able to afford the plaintiff in this proceeding.

8. It is a general rule, regulating the practice of the Court of Chancery that a bill of discovery, filed in this court to aid in the prosecution of suit at law, cannot be maintained against one *who might be a witness in the suit.*

9. But the statute of 1849 has introduced a new principle, unknown to the common law ; a new case has arisen, to which the rule could not have

* The "Act concerning evidence," reported by the law commissioners, and passed in 1855, contains a section which avoids the necessity of filing a bill in chancery for discovery in such cases.—REPORTER.

been applicable when adopted. It is, therefore, a question addressed to the sound discretion of the court.

10. The statute ought not to deprive the plaintiff of his right to file his bill to aid him in the prosecution of his suit at law.

This bill was filed by the complainant, seeking discovery in aid of his prosecution of a suit at law. The bill alleges that Sarah Milward, wife of John Milward, as the heir-at-law of her father, became entitled to certain real estate in the county of Mercer. That, on the seventeenth day of September, 1814, the said John and Sarah, for the consideration of $100, granted and conveyed a part of the same to Joseph Ashmore, which is the land in question between the parties to this suit. That the deed was acknowledged before a proper officer, but that, in taking the acknowledgment, the officer did not certify that the said Sarah was examined privately and apart from her husband. That Joseph Ashmore entered into the possession under the deed, and so continued until the 24th of June, 1816, when he sold, for a valuable consideration, to James Ashmore, the brother of defendant, who entered into the possession. That James, being about to leave the state for a considerable time, and wishing to make some provision for the care of his aged father, permitted the defendant to take possession of the premises, under an agreement to cultivate them for the mutual support of himself and his father. That, under that arrangement, the defendant entered and kept the possession until the death of his father in 1846.

That, in December, 1845, James Ashmore, for the consideration of $200, sold and conveyed the premises to the complainant, and which deed was duly acknowledged and recorded. That, at the time of his purchase, the complainant did not know of the defect in the acknowledgment of the deed from Milward and wife. That, afterwards, discovering the defect, the complainant applied to Mrs. Milward—told her the difficulty, and thereupon, without hesitation, on the 24th day of June, 1847, she, for the nominal consideration of $1, duly executed and delivered to complainant a deed for the premises, which was recorded on the 22d day of

April, 1848. That then the complainant commenced an action of trespass and ejectment for the land, and, in July Term of the Supreme Court, the defendant applied and entered into the usual consent rules to defend as the owner. That, on the 20th of September, 1847, the defendant being fully apprised of the fact that the said Sarah M. had given the last-named deed to the complainant, but finding it was not recorded, procured her to execute a deed to him, of the date last named, purporting a consideration of $170, and which deed, on the next day, was recorded.

The bill further charges that the defendant did not pay any consideration for the conveyance to him, and at the time he obtained it, had full knowledge of the complainant's title. That the deed to defendant was privately and secretly executed, and that defendant has refused to give any information in relation thereto. That Sarah M. resides out of this state, and that complainant cannot discover whether she is aware that, at the time when she made the deed to him, he had any knowledge of the prior deed to the complainant, nor has complainant been able to discover who was present when the deed to defendant was executed.

The bill then prays a discovery as to the knowledge of the defendant of the complainant's deed from Sarah Milward, at the time of the execution of her deed to him, and the consideration upon which, and the circumstances under which it was executed.

The defendant has demurred to the bill.

*Mr. Dayton,* for demurrer.

*Mr. Beasley, contra.*

THE CHANCELLOR. This is a bill for discovery only. The complainant asks the discovery in aid of his prosecution of a suit at law, instituted by him against the defendant in the Supreme Court, and for the purpose of using the disclosure upon the trial of the said suit. No interference with that

Howell v. Ashmore.

suit is asked, nor is relief prayed for. The principles applicable to a bill for discovery only, are in some respects different from those which govern the court, where the bill prays for an injunction to stay proceedings at law, or in any way to interfere with such proceedings, until the bill is answered; or where, in addition to the discovery, relief is prayed for. In the case of a bill for mere discovery, if it appears reasonable that the complainant should be entitled to the disclosure, and no principles of law or equity are violated in enforcing it, as the complainant must pay the costs of the suit, whatever may be the defendant's answer, the court will not be as nice in the application of technical rules as where an injunction or relief is asked for. *Seymour* v. *Seymour et al.*, 4 *John. C. R.* 409; *Bishop of London* v. *Fytche*, 1 *Brown C. C. Rep.* 69.

For instance, in a bill for discovery only, "it is not necessary to aver that the discovery is absolutely necessary, or indispensable to the defence. It will be sufficient to state and show that it is material evidence. Thus, for example, it is not necessary to allege in the bill, that the plaintiff has no other witness or evidence to establish at law the facts of which the discovery is sought; for he is entitled to it, if it be merely cumulative evidence of material facts. It would be otherwise, if the bill should not only ask discovery, but should ask relief in equity." *Story's Eq. P.*, § 324.

An objection was made to this bill, because it does not sufficiently aver that the complainant cannot make proof of the facts of which discovery is sought without the aid of this court.

If the interference of this court was asked with the suit at law, then perhaps the bill, or affidavit, ought to have stated the belief of the complainant, that the answer would furnish discovery material for the defence, and that the complainant had no means of obtaining the facts without such discovery. 4 *John. C. Rep.* 411. But no interference is asked for; and besides, though there is no direct averment that the disclosure is material and requisite, the case made by the bill, and which the demurrer admits, shows manifestly the mate-

rialty and importance of the facts of which discovery is asked. As regards the most important fact, and the one which it is the principal object of the bill to reach, to wit, whether at the time the defendant obtained the deed from Mrs. Milward, he had knowledge of the plaintiff's deed from her of the 24th of June, 1847, that is a matter so peculiarly within the exclusive knowledge of the defendant, that it might almost be considered as superfluous to aver, even if formality required it, that the plaintiff had not the means of obtaining the fact without such discovery.

The bill alleges that the deed from Sarah Milward to the defendant, and which he sets up to defeat the plaintiff's title, was privately and secretly executed, and that the defendant has at all times refused to all persons to give any information in relation thereto ; that Sarah Milward resides out of the state, and that the complainant cannot discover whether she is aware that the defendant, at the time when she made the deed to him, had knowledge or information of the deed to the complainant; and that the complainant has been unable to discover who were present at the execution of the deed.

With regard to all the other facts and circumstances of which the defendant is called upon to make disclosure, they all relate to and bear upon the material question—whether or not the defendant was a *bona fide* purchaser without notice.

I think the bill sufficiently shows the materiality of the facts to the plaintiff's case at law, and also that he cannot safely rely upon any testimony from other sources to supply the evidence.

It is again objected that the complainant does not show his action at law was commenced subsequent to the time when his title accrued. It is true this is not very explicitly stated, but it is evident the counsel who drew it supposed that it so appeared by the bill. There is certainly a confusion as to dates, arising from want of care. The bill states the complainant commenced his action of ejectment, and such proceedings were had therein, that in the July Term of the

Supreme Court in the year *last aforesaid*, the said Thomas Ashmore appeared, &c. The year "*last aforesaid*," in the bill, is the year 1848, and yet it is stated that the cause was noticed for trial in September, 1847. There is certainly a mistake as to dates.

But the complainant, after setting forth the manner in which his title accrued, states that, having then become entitled to the said premises, he went to take possession, and the defendant refusing to deliver the possession, he commenced his suit. The whole statement of the case by the bill shows, I think clearly, that the suit was commenced after the plaintiff's title accrued, but before he had his deed recorded. A mere clerical mistake of a single figure the court would permit to be corrected *instanter* upon the suggestion, unless by any possibility the defendant had been misled by it.

It is further insisted, in support of this demurrer, that the subject matter is not one entitling the complainant to a disclosure from the defendant; that a defendant cannot be compelled to discover his own title; that the prayer of the bill is not simply a discovery as to whether the defendant had notice, but of the consideration the defendant gave for the property, and of other matters attending the purchase.

"One of the fundamental rules of this branch of equity jurisprudence is, that the plaintiff is entitled only to a discovery of what is necessary to maintain his own title, as, for example, of deeds under which he claims. But he is not entitled to have a discovery of the title of the other party from whom he seeks the discovery." *Sto. Eq. Ju.,* § 317.

In this case, the bill does not seek a discovery of the defendant's title, nor of the defence he seeks to set up against the plaintiff's right of recovery. But the complainant alleges that the defendant has procured a title, which title the complainant sets out in his bills, and insists that such title ought not to prevail against his, and that the defendant procured his title with notice of the complainant's prior title. All he seeks to discover is, whether the defendant had the notice at the time of his purchase.

A *bona fide* purchaser, without notice, and for a valuable

consideration, is entitled to have his title protected by this court, nor will he be compelled to discover anything which will invalidate that title. But when the defendant is charged with fraud, and that he has procured a title fraudulently, and is fraudulently setting it up to defeat the complainant, it is the peculiar jurisdiction of a Court of Chancery to compel such a fraud-doer to disclose the fact alleged as a fraud, and all the circumstances attending the act, in order that the court may determine whether those circumstances establish the fraud or not.

The defendant is called upon by this bill to state whether he had notice of the complainant's deed, and the circumstances under which he procured his own deed, in order that by them it may be determined whether he is a *bona fide* purchaser without notice. The disclosure sought is as to the notice, and inquiry is made as to the consideration he paid, and of other circumstances only as they affect this point. They all bear upon the question of notice, and are introduced to test the defendant's conscience as to that matter.

It seems never to have been questioned but that the object which is sought by this bill is a proper one for discovery.

A defendant may object to the discovery that he is a *bona fide* purchaser of the property for a valuable consideration, without notice of the plaintiff's claim. To entitle himself to this protection, he must not only be a *bona fide* purchaser, and without notice, and for a valuable consideration, but he must have paid the purchase money. *Story's Eq. Ju.*, § 1502. But was it ever objected that he could not be compelled to disclose whether he was a *bona fide* purchaser without notice, or what consideration he gave, or the circumstances under which he purchased?

"If a defendant has in conscience a right equal to that claimed by a person filing a bill against him, though not clothed with a perfect legal title, this circumstance, in the situation of the defendant, renders it improper for a court of equity to compel him to make any discovery which may hazard his title; and if the matter appears clearly, on the face of the bill, a demurrer will hold. The most obvious case is

that of a purchaser for a valuable consideration without notice of the plaintiff's claim." *Mitford's Pleading* 162.

But upon the case made by this bill, has this defendant, in conscience, a right equal to that claimed by the complainant? Is it not most unjust that a title acquired in the manner as it is alleged the defendant's was, should be set up and prevail? The defendant has no equity whatever. He admits by his demurrer the fraud he has practiced, and insists that the court should aid him in taking advantage of it by extending to him the same protection that a man, holding an honest title, would have a right to claim.

In *Jerard* v. *Sanders*, 2 *Ves.*, *Jr.*, 187, the bill was filed for discovery of deeds relating to the plaintiff's title, and to restrain proceedings in ejectment. The bill charged constructive notice of a settlement in the party under whom the defendant claimed. The defendant pleaded purchase for valuable consideration, and averred that J. D., under whom he claimed, had not, to his knowledge or belief, any notice of the title set up by the plaintiff. The Lord Chancellor says he must set forth the facts charged in the bill, from which the court will construe notice. He assumes to himself the proposition. He judges what is constructive notice, and then denies that, to his knowledge and belief, he had constructive notice. The bill does not impute direct notice to him. He must let the court judge of that. The plea was overruled. The case is further reported in the same book, 454. The defendant answered, and fully and in the most precise terms denied all the circumstances alleged, from which notice might be inferred. He showed he was a *bona fide* purchaser without notice, and then the Chancellor said that against such a purchaser the court will not take the least step imaginable, and no advantage the law gives him shall be taken from him. But it was not set up in that case that the subject matter of which discovery was sought, was one of which the defendant could not be called upon to make disclosure, on the ground it was discovering his own title.

In 14 *Ves.* 57, *Claridge* v. *Hoare*, Lord Eldon says: "It is then said this plea (referring to the plea in that case) should

VOL. I.    F

be supported by an answer. Such a plea does not require the support of an answer as a plea of purchase for valuable consideration without notice, does. That plea requires the aid of an answer, the bill insisting upon notice and charging facts to make that out. The defendant must answer, either admitting, denying or qualifying all the circumstances upon which it is contended that if the defendant will speak, notice, though denied, will appear."

It appears to me very clear that it is a proper object for a bill of discovery to ascertain, in a case where the defendant's title can only prevail upon the ground of his being a *bona fide* purchaser without notice of the plaintiff's title, whether he had such notice, and to call upon him to disclose all the circumstances which may go to probe his conscience upon that point.

In support of this demurrer, it is further insisted that under the act of the legislature of this state, of March 1st, 1849, the plaintiff can call upon the defendant as a witness upon the trial of the suit in ejectment, and that therefore this bill is objectionable upon two grounds :

1st. That this court is called upon to assist a suit in another court competent to grant the relief here sought.

2d. That you cannot have a bill of discovery in aid of a suit pending against any one who is a competent witness in that suit.

As to the first ground. The principle is correctly laid down in *Story's Eq. Jur.*, § 1495 ; in *Cooper's Eq. P., ch. 3, p.* 191, and in *Mitford's Plead.* 52, that in the case of suits merely civil, in a court of ordinary jurisdiction, if that court can itself compel the discovery required, a court of equity will not interfere. The cases referred to in support of the principle are those of *Dunn and others* v. *Coates and Balguy*, 1 *Atk. Rep.* 288, and an anonymous case in 2 *Ves.* 152, which were cases where the plaintiffs sought a discovery in aid to the ecclesiastical jurisdiction, and in which cases the discovery was denied on the grounds as stated by the Lord Chancellor, that " the coming into this court in aid of the ecclesiastical jurisdiction is always denied here," and

the party does not there want it, " because he may exhibit articles in that court, and have an answer on oath, which is the constant method there."

It would seem that, in the ecclesiastical courts, the party could exhibit articles in the nature of a bill of discovery, and have an answer on oath, which would afford him the same relief as a bill of discovery would in the Court of Chancery.

But is the Supreme Court, where this suit is pending, to assist which this bill has been filed, competent to grant the same relief which this court is able to afford the plaintiff in this proceeding?

That court can compel no discovery by any proceeding in the nature of a bill of discovery. It can compel the defendant to answer as a witness on the trial of the cause, if called upon by the plaintiff. But the disclosure he may make then, may be of no avail to the plaintiff. The plaintiff has a right to the discovery, before the trial, to aid him in preparing to meet the very case the defendant may make by the disclosure. A party may exhibit his bill before his suit is commenced, so as to enable him rightly to frame his action and declaration.

*Story's Eq. Ju.*, § 1495, and cases cited in the note.

In *Story's Eq. Ju.*, §§ 1486, 1487, the means provided by the Roman law for obtaining the oath of parties is stated. Interrogatories in writing were propounded which were answered by the other party under oath, and the relief afforded was as effectual as that obtained by a bill of discovery in a Court of Chancery.

The mode of proceeding in the ecclesiastical and civil courts is concisely pointed out in *Story's Eq. P.*, § 850 : " In the civil law the defendant first puts in his defensive allegation to the claim made by the plaintiff, and after an answer to that is put in, the plaintiff propounds, in a sort of supplemental libel, called the *libellus articulatus*, his interrogatories respecting the charges made in the positions of the plaintiff, as they are called (that is) in his bill of complaint ; and the defendant then responds to those interrogatories. In the

ecclesiastical courts, where also the defendant is required to make an answer or discovery upon oath, the answer to the interrogatories is in a wholly distinct instrument from the responsive allegation (as it is called) to the libel which contains the defence of the defendant.

But the remedy afforded by our statute was not intended to supply the place of a bill of discovery. In does not afford the adequate relief, for it does not meet the wants of the party.

As to the other ground, that you cannot have a bill of this nature in aid of a suit at law against one who is a competent witness in the suit.

The general rule is, that it is a good objection to a bill of discovery that it seeks a discovery from a defendant who is a mere witness, and has no interest in the suit. But the rule has its exceptions.

*Story's Eq.*, § 1499 ; *Cooper's Eq. P.* 200.

Whenever the rule is laid down, this reason is always given for it : that there is no ground for a bill of discovery, since his answer would not be evidence against any other person. The reason is not applicable here.

One exception to the rule is the case of making the agents, officers, and directors of a corporation parties. There are reasons given for this exception in the authorities where such bills have been sustained, but no better reasons, nor as good as those which may be suggested, why the case before should not be an exception to this general rule.

In the case of *Glasscott* v. *Copper Miners' Company*, 11 *Simons' R.* 305, the doctrine was firmly established that a bill for discovery merely, may be maintained against a corporation and its officers.

If these objections prevail, it strips the court very much, if not entirely, of its jurisdiction, in cases of this kind.

As the object of this jurisdiction is to assist and promote the administration of public justice in other courts, bills of discovery are greatly favored in equity, and will be sustained in all cases where some well-founded objection does not exist against the exercise of the jurisdiction. *Story's Eq.*, § 1488.

Now, the statute of 1849 was passed for the benefit of the party who might see fit to call upon his adversary in a suit to testify as a witness; but if this court should determine that the statute deprives the plaintiff in this suit of the benefit of this bill, and thus compels him to resort to his adversary as a witness on the trial, this statute, instead of proving, as it was intended, an advantage in the prosecution of his suit, may operate greatly to his prejudice. It compels him to make the defendant a witness not only as to the simple fact about which he wishes to interrogate him, but makes him a witness in his own cause, competent to give testimony on his own behalf.

But this principle which has heretofore governed courts of equity in entertaining bills of discovery, is not an inflexible rule, and one which cannot, or ought not, to be subservient to any new exigency that may arise in the administration of justice.*

Here is presented a new question. The legislature has not, by positive act, abolished or limited the jurisdiction of this court as to bills of discovery, but has introduced a new principle unknown to common law. A party in a suit may now call upon his adversary as a witness. It is a general rule regulating the practice of the Court of Chancery, that a bill for discovery could not be maintained against one who might be a witness in the suit. It is a rule of policy, founded upon good and substantial reasons. Under the peculiarity of this statute, a new case has arisen, one to which

---

*Story, in his *Eq. Jur.*, § 64, in speaking of the jurisdiction of the Court of Chancery, says: One rule is, that if originally the jurisdiction has properly attached in equity in any case, on account of the supposed defect of remedy at law, that jurisdiction is not changed or obliterated by the courts of law now entertaining jurisdiction in such cases, when they formerly rejected it. This has been repeatedly asserted by courts of equity, and constitutes, in some sort, the pole-star of portions of its jurisdiction. The reason is, that it cannot be left to courts of law to enlarge, or to restrain the powers of courts of equity at their pleasure. The jurisdiction of equity, like that of law, must be of a permanent and fixed character. There can be no ebb or flow of jurisdiction dependent upon external changes. Being once vested legitimately in the court, it must remain there, until the legislature shall abolish or limit; for without some positive act, the just inference is, that the legislative pleasure is, that the jurisdiction shall remain upon its old foundation.

the rule referred to could not have been applicable when it was adopted, for such a case could not then have arisen. We have now to deal with it, and it is a question addressed to the sound discretion of the court, whether the ends of justice will be best promoted by making a case like that before us an exception to the rule.

I do not think that this statute ought to deprive the plaintiff of his right to file his bill in this court to aid him in the prosecution of his suit at law. I do not think that he should be compelled to resort to the alternative of making the defendant a general witness in the suit, or be deprived of having the benefit of a disclosure before the trial, so that he may prepare himself to meet the facts which may be presented by the disclosure which he seeks.

Let the demurrer be overruled, with costs.